Mr. McClain. Good morning, Your Honors. May it please the Honor. I would like to reserve two minutes for rebuttal. In this case, there was a plethora of error that denied Mr. Suarez a number of constitutional rights, including the rights to due process and a fair trial, the rights to effective assistance of counsel, the right to compulsory process, the right to present a defense. We submit that in this case, his assistance of counsel, and we are very mindful of the court's jurisprudence that states generally a claim of ineffective assistance of counsel should be raised on a collateral proceeding. However, we submit that the errors here are so lucid and so clear on the record that a collateral proceeding ought not be necessary or required in this matter. Don't you really need an evidentiary hearing? I mean, for instance, to know things like whether counsel had a good reason for not calling Nancy Bryan? I mean, shouldn't... And that's just one among a number of things. I mean, don't you really need an evidentiary hearing? And hasn't the rule always been there's a narrow exception if the record is clearly established, but it strikes me that there are things that you would need a hearing for, aren't there? Such as what I just mentioned. Yes. Frankly, Your Honor, with that particular example, it's probably the best example on the record that we need a hearing for, but there's a number of other issues. And even that particular example, we submit that we can see no reason, Your Honor, to search the record or search one's... any possibility for not calling the grandmother in a case where... Yeah, but we don't have a record on that. And our cases are pretty clear. I mean, I know that I actually authored one of the exception cases, but it wasn't like this. I mean, on this kind of case, we have to hear counsel, and we don't hear counsel. So you can go on with that, but if you have other... Well, unless... Very well. I will understand the court's position. I will move on. Yeah, our precedent is clear. Go ahead. Very well, Your Honor. One of the other issues I think is very, very clear, and certainly is the issue of the court's denial of Mr. Suarez's right to present a defense under the Sixth Amendment Compulsory Process Clause. In this case, Mr. Suarez sought to have his sister-in-law present testimony that he had babysat children many times, and that testimony was disallowed. Now, would you consider that to be character evidence or habit evidence? It's clearly habit evidence, Your Honor. I would submit it's habit evidence under the Virgin Islands at that time, Title V, Section 889 or under 405 of the Federal Rules of Evidence. In that case, it's habit evidence, something that's been done a number of times previously, that is consistent with the same circumstances of the very crime he was charged with, and we submit it was clearly proper testimony. And it's a situation where a defendant has a right to present a defense. That much is clear. In this case, in this court's decision of Mills, it clearly stated the defendant has a right to present testimony and a right to present a defense. In Chambers v. Mississippi, the Supreme Court said evidentiary rulings cannot supersede the basic fundamental right of a defendant to present a defense. But the question is, isn't it, whether this is admissible evidence? I don't think there's any question. Nobody would say the defendant doesn't have a right to present a defense, but you have to do so with admissible evidence. And was the evidence that he never molested any other child for whom he babysat admissible? Absolutely. Under every rule of evidence, whether it be 4.1 or 4.2, Raich says relevant evidence is admissible. And under 4.5, Raich says evidence of habit is clearly admissible. But is that a habit? Yes, it is, Your Honor. If, in fact, he has done something repeatedly over a period of time... But this is has not done something. Pardon? But this isn't that he has done something repeatedly. The evidence is that he has not done something. In other words, if I always put my signal on, my turn signal on, when I turn left, that might be a habit. But that I don't put on my signal when I turn right may not be a habit. I would respectfully disagree, Your Honor. I understand exactly the court's question. But the absence of doing something is, in fact, also a habit, Your Honor. In this case here, what has always been done is babysitting children, just like the circumstances of the babysitting of AB, which led to this case, Your Honor. And our position is that if he did not, in fact, do have any complaints or molestation with the times when he did babysit children in the same circumstances as the babysitting of AB, that, in fact, it's a habit. So the absence of doing something clearly also is a habit. Let me read the advisory committee note to Rule 406. Character and description of one's disposition in respect to a general trait, such as honesty, temperance, and peacefulness. Isn't that what you're really presenting here? You're showing that he's not a person that molests children. You're really showing his character, isn't he? We submit, Your Honor, that we are showing that, in fact, when given the opportunity to babysit children, his habit was not to molest them. And with the issue of character, we have another issue here, which we think is very, very important, maybe a novel issue for this court and other courts. And that's the issue of the Rule 414 of the Federal Rules of Evidence, where it states that the Congress has said under the Federal Rules of Evidence that evidence of prior molestation can, in fact, be admitted. And we think that it would be terribly unfair, a violation of due process, fair trial rights, if, in fact, under 414, you can have evidence of prior molestation. So if, in fact, Mr. Suarez had molested others in the past, that should be a charge. It doesn't have to be proven. You could have endless situations coming in under that rule. Well, we submit, Your Honor, we submit that that's an additional basis for, in fact, permitting the testimony to come in. Because you have a situation where had he molested children in the past under similar circumstances, it would have been clearly admissible under 414. We're saying, and to counter the argument that it would be endless situations, it is not. Because we have specific circumstances here, babysitting children many times in the past where he did not molest, and we submit that it would be only fair for defense to allow that testimony to come in also under 414. How about the perjury testimony? What in the record demonstrates that the government acted to withhold Brady evidence? Well, Your Honor, we submit that there were two cases where you had a situation where the child did not at first make a statement that said the words soft to hard. And we think, frankly, words like that to a jury, that ends the case. So what shows that they withheld this? They withheld this. And we submit, Your Honor, there was a... You know, that they counseled her to... Well, go ahead. Yeah, we submit, Your Honor, quite honestly, Your Honor, we don't think the record as it stands now is actually developed to say that that's actually occurred, that they counseled her to say that. We submit, however, that in this case the circumstantial evidence is such that, in fact, that was done. We have no smoking gun to say that, well, that's what they counseled her to do. We just submit that the circumstances here were such when she kept on saying it was soft and all of a sudden that trial gets a soft to hard. We believe the circumstantial evidence is strong to say, in fact, it was perjured testimony. And it was testimony that did not arise before. There was evidence that, in fact, a police report was, in fact, destroyed or not presented. And that, we submit, could have led to the argument, in fact, that it was perjured testimony. There's no question. Okay, let me ask you one other thing. Would it make sense to require someone to resist a rape if they didn't know they were being raped? If they didn't know what was going on? If they thought this was just... A game. A game. Actually, it doesn't make any sense. I agree with the court with that. But that's the issue, was there any resistance? And I understand very clearly that I have no problem with the argument from the appellate division. I said it's relational, meaning that a child may offer less resistance than someone else to come under the forcible resistance aspect. But the court is correct. It does not, if she doesn't know it's a crime, she may not offer any resistance at all. But then the crime should not be forcible rape with resistance not offered. The crime should be, as in this case, with the child underage. So I think clearly that a situation where you have a child not knowing that it was a rape, she is not required to offer resistance. But then the conclusion should be, in fact, it's not a forcible rape. Even the government conceded that there is little evidence of forcible rape in this case. Your insufficiency of evidence argument does not go to the conviction for aggravated rape, right? It does, but frankly our better argument is the forcible resistance aspect. The argument as to the insufficiency of the rape itself goes to the issue that she did not say it was a penis, that she knew the fact it was a penis. We submit quite bluntly, however, that the circumstantial evidence is such, especially the soft to hard component, that in fact the jury could conclude that under that aspect that it was sufficient evidence circumstantially. And so a stronger argument with regards to the insufficiency argument does, in fact, go to the forcible component, the lack of resistance, which is what Virginia's law still implies. But it mattered for purposes of, were they concurring sentences? Yes, I'm pretty sure it was, Your Honor. So it wouldn't matter as long as one count held up, then it wouldn't affect the ultimate disposition? Not a sentence, Your Honor. However, in this- Were they coterminous? Did they end at the same time? Were they the same length? No, I believe one was 25 years, one was 10 years, Your Honor. And which was 25? I'm pretty sure it was the aggravated rape issue, Your Honor. So the court is correct. Slavitt is correct. The aggravated rape was 25? I believe so, Your Honor. And the rape in the first degree was 10 years? I believe so. But you were saying I was right. I want to hear the rest of that. Ultimately, I don't think it matters as to the insufficiency arguments as to the ultimate decision. However, we submit that in this world of sentencing guidelines and everything else, potential collateral consequences of different convictions, that, in fact, there ought not be two convictions in this matter. Indeed, we submit under Virgin Islands 14 V.I.C. 104, where that statute says that you may be convicted of more than one offense under Virgin Islands law, but you can, in fact, only be sentenced under one offense. There's a question in my mind as to the vitality of the concurrent sentence doctrine anyway, everywhere. I think that the concurrent sentence doctrine has been under regular criticism, I guess because of the collateral consequences. Very well, Your Honor. Thank you. Does anybody have any more questions? No. Thank you. Yes. Good morning, Your Honors. My name is Dolese McLean, and I'm representing the Virgin Islands Department of Justice. Well, I'm representing the government of the Virgin Islands, so I work for the Department of Justice. Please, you'll have to speak up a little. Oh, I'm sorry. Because we have to get you on the disc. You know, we've graduated. No more tapes. Now it's a disc. Okay, Your Honor. It's a CD. Okay, I'll start. Well, good morning. I'm Dolese McLean from the Virgin Islands Department of Justice, and I'm here on behalf of the government of the Virgin Islands. Your Honor, you know, constitutional violation claims notwithstanding, this case is rather simple, and it's easily distinguished on the facts. I stand by my arguments that I made in my brief, but I would like to address a few of the issues that the court presented to the appellant, specifically the habit argument. Your Honor, I submit that the habit of not doing something really is an oxymoron. There is no such thing, really. At the end of the day, what this appellant is claiming is that I have a habit of not molesting young girls. I have a habit of upholding the law. But that is not really a habit. That's an expectation is really what it is. And so that claim is without merit. Moreover, Your Honors, even if we were to, I don't know, indulge the appellant and say that, okay, yes, you have a habit of not molesting young girls. Good on you. Your Honor, at the end of the day, it has no bearing on whether or not he molested a little girl in this case. On July 31 of 2002, this appellant admitted at trial that he blindfolded his daughter, his 4-year-old daughter and his 10-year-old niece. He admitted that he played a tasting game with them. He also admitted that he put various objects in their mouths. And he admitted that at one point in the game, his 10-year-old niece kept her mouth open while he inserted first a Twinkie. And he said to her, oh, honey, you have to bite on it. You have to bite on it or suck it up. But she kept her mouth open, so he opened another Twinkie and put that in there. And then he said, honey, you either bite it or suck it. And she still didn't comply. So he said, okay, well, let me put a banana in her mouth, which, according to him, the tendrils of the banana probably felt like hair. Those facts, Your Honor, are the facts on which the jury based its decision. Let me ask you, on those facts, I'm not quite sure I understand why he was prosecuted under the statute he was prosecuted under. The statute, as you know, says whoever perpetrates an act of sodomy, and then it gives a whole different, and there are four, there are actually five different ones, but the four that are possibly relevant here. One, it's first degree rape if you perpetrate an act of sodomy when, by reason of immaturity, the person does not offer resistance. That's number one. Number two, which he was prosecuted under, is when the person's resistance is forcibly overcome. The third is when the person's resistance is prevented by fear of bodily harm. And finally, when the person is, at the time, unconscious of the nature of the act, and this is known to the defendant. Now, I have trouble, this case was prosecuted under two. They were playing a game. It seems like if it was anything, it was five, but what is the, where is the person's resistance forcibly overcome on the facts that you just outlined for us? How could a jury so find? Well, Your Honor, this was a 10-year-old child. The relative difference in age, and the defendant at the time was 29 years old. The child was 10 years old at the time. The defendant was also a person whom she trusted. He was in a position of trust vis-a-vis the victim. He was, as it were, an uncle, common law, but an uncle. And when he put the object in her mouth that she could not recognize, he forced her head onto the object so that she gagged. Now, at 10 years old, with the belief, the very innocent and natural belief, that you were playing a game with your uncle, and he pushes an object into your mouth and continues to push it into your mouth, that, you're 10, he's 29, a man who's worldly wise, and you're a 10-year-old child, that counts as force. And it's for those reasons. But where's the resistance? That's what I don't, when are we going to get to the resistance part? Well, she asked him to take it, he said, do you want to stop? And she said, yes. And he said, okay, just a second. And then he pushed the object, her head onto the object a few more times. So she did ask him to stop. He asked her if she wanted to stop playing this game so that they could give him the testing thing, which they did. They continued to play the game with him being the blindfolded person. Yes, they did. But the resistance there, Your Honor, is that you have to understand, the context is everything. And so if you're 10 years old playing what you believe to be a tasting game with your uncle, and he pushes your head onto an object, and you say stop, I mean, he don't even know it's happening. She didn't say stop. He asked her if she was ready to stop playing the game. She said yes, and he said okay. And he did do two more thrusts, apparently, before he stopped. And that saying no and his continuing to put her head on the object counts as force. Do you have authority for that? Well, of course, but not overcoming resistance, which is what Judge Stapleton asked him. Well, you've got to forcibly overcome a person's resistance. And I'm questioning whether there's any evidence from which a jury could find she resisted here. Well, Your Honor, you know, it's a matter of subtlety almost, and I imagine it's a matter of how much does a 10-year-old victim have to do to prove that she doesn't want something unpleasant to happen to her. I have no authority to help me distinguish that gray area. But given the circumstances of this case, her asking him to stop and his refusal to do so counts as resisting. Most modern jurisdictions no longer require resistance for these types of crimes. Under Virgin Islands case law, would there be support for the child not having to resist? Is there any support for that? There was none that I found, Your Honor, but then it was also not an issue that I researched. In Pennsylvania, under Pennsylvania law, I was in a place not long ago where we held that the age of the child was very relevant to that, and that just by virtue of being a minor, there was support, even though there was no court. Does it matter whether we uphold the conviction on both counts or just on one count, if we think one counts? I think there was sufficient evidence to sustain both counts. I know you would take that position. Naturally. Obviously. But does it matter? I mean, in the long run, does it matter? Practically. I see no problem. As long as it's the upholder, one that has the longer term. Given the particularly egregious nature of these facts, yes, I would say so. Any more questions? Did you have anything more to comment? No, Your Honors. Other than to say that with regard to the Brady violation, the appellant's claims that there was perjured testimony or withholding by the government. Again, I repeat, the appellant, defendant at trial, was the one who substantiated the case of the government. Even if there was some doubt as to the credibility of the story, I was told by A.B. the defendant filled in a lot of the gaps. Much has been made of this statement about the degree of rigidity. We don't have to go into all that, but would you just comment on that? The soft to hard testimony. There are a couple of things with regard to that. One, Nancy was not there. She did not observe the incident. That's the first thing. Second of all, Nancy kept saying, this is the grandmother of the little girl, kept saying she was shocked because the little girl said to her, oh, it was soft, it was soft. But of course, it's going to be, the penis is going to be soft when one puts it in, when he puts it in her mouth. Again, the petitioner said, yes, I put something soft in her mouth. He claims it was two Twinkies. And then he says, oh, and then I put a hard object in her mouth. He claims it was a banana. So regardless of what Nancy would have said, the defendant at trial admitted, I put soft things and then I put hard things in her mouth. So even if the victim had only said, oh, it was soft, and then changed her testimony, it's irrelevant because the defendant pretty much gave her that. And, yeah, so that's not a real issue, I think. Thank you. Thank you, Your Honor. Yes, Your Honor. Your Honor, this case was one that I would submit was keenly balanced and issued as to the evidence. The government says given the egregious nature of these actions, I would just like to refer the Court to page 51 of the appendix, Volume 2, where, again, fortunately this was not admitted into evidence, but it was part of the post-trial brief, where in fact there's an Internet site that talks about a super-tasting game, blindfold the kids and have them sample different foods, and guess what they are. So any argument that this is something that was so overwhelmingly egregious, we submit that it's not. In fact, it's a game that is played with young children. And so that was played by Mr. Suarez with these young children. It says blindfold the kids and have them taste different foods. And we submit, Your Honor, when this case was so clearly in balance, where in effect the AB said, well, I don't know it's a penis, and to say something came from soft to hard in her mouth, she didn't say it was taken out. We submit it's very, very critical. And we, of course, there's alternative explanations for why she thought that, but the fact is she kept on saying it was soft repeatedly, then she said it was hard. When she got to trial, it became soft to hard, which I would submit that no juror could have ignored that evidence. And, in fact, the defendant testified that he did put different objects in her mouth. And we submit that when you have that sort of balance, when, in fact, what happened here we submit was no crime at all. And to not have testimony, in effect, that says that this defendant has in the past babysat children and not have that testimony presented to the jury deserves a new trial. Directly violated his fundamental rights to present testimony, present evidence in this case, Your Honor. And it is so critical given the closeness of this case. And we believe that the court ought to grant a new trial. Thank you, Your Honor. Thank you. And, Your Honor, I think I spilled, well, I know I spilled some water. If there's a napkin I can drop the table off right quickly. I give up. Okay. We will hear the fourth of the five matters before us today, and that's Russell v. Governor DeGioia. Oh, yeah. Do you want a mic? No. Okay. Thank you.